# CHARLESTON.

WOLFE v. SECOND NATIONAL BANK OF PARKERSBURG.

Submitted September 4, 1903—Decided February 2, 1904.

1. FACTS—*Decree of Circuit Court.*
    A decree of the circuit court determining questions of fact, unless plainly wrong, will not be disturbed. (p. 693).

2. FACTS—*Commissioner's Report.*
    The report of a commissioner as to matters of fact supported by evidence confirmed by the circuit court, unless plainly contrary to the evidence or without evidence to support it, will not be disturbed. (p. 695).

Appeal from Circuit Court, Wood County.

Suit by W. H. Wolfe against the Second National Bank of Parkersburg. Judgment for plaintiff. Defendant appeals.

*Affirmed.*

F. P. MOATS and MERRICK & SMITH, for appellant.

V. B. ARCHER and WM. BEARD, for appellee.

DENT, JUDGE:

The Second National Bank of Parkersburg complains of a decree against it rendered by the circuit court of Wood county in favor of W. H. Wolfe canceling and annulling a certain $5,000 note, and the deed of trust executed to secure the same.

The bill alleges that during a panic or run on the bank occasioned by the defalcation of Lee B. McFarland, acting as individual bookkeeper and teller of such bank, the plaintiff, who was cashier, for the purpose of putting the bank on a safe basis, executed to the bank seven five thousand dollar negotiable notes, amounting to $35,000.00, with a deed of trust on his property in lieu of the following doubtful claims held by the bank, to-wit:

Taken up W. H. Wolfe, February 13, 1897, and credited

| | |
|---|---:|
| Equitable National Bank, Baltimore | $4,000.00 |
| Credited City Bank, Wheeling | 5,000.00 |
| Credited Peoples' National Bank, Pittsburg | 5,000.00 |
| Credited National City Bank, New York | 5,000.00 |
| Dom. Bills L. W. Smith | 180.00 |
| Dom. Bills L. W. Smith | 800.00 |
| Dom. Bills 72828 P. C. St. Ry. Co | 5,000.00 |
| Dom. Bills L. B. McFarland | 3,300.00 |
| Foreign Dom. Bills J. A. Steel, 20 February | 1,430.00 |
| J. A. Steel, 21 February | 251.60 |
| J. A. Steel, 13 May (2,481.60) | 800.00 |
| Interest on L. W. Smith | 25.42 |
| Interest on L. B. McFarland | 3.30 |
| Interest on P. C. St. Ry. Co | 1,192.00 |
| Foreign Certif. Deposit | 2,791.17 |
| Total | $34,573.09 |

The aggregate of these claims with interest was $34,773.31, but plaintiff executed notes for even $35,000.00, and credited himself on the books with the supposed difference. Some of these claims plaintiff admits that he was legally liable for, and others he only assumed and expected at some time the bank would make a proper adjustment thereof with him. Among the latter plaintiff places the Steele bills and the certificates of deposits. Plaintiff paid six of the $5,000.00 notes, and the other he declines to pay and asks to be canceled, for the reason that it has

been since discovered by the examination of an expert that one of the $5,000 notes assumed by him for the Park City Street Railway Company was a renewal of a similar note of such company, and that instead of there being four of such notes, there were only three, one of them being duplicated by renewal.

The defendant bank answered the bill, and denied plaintiff's right to the relief sought, and further files as a claim for affirmative relief and as an offset against the plaintiff's demand, the following list of adverse demands, to-wit:

1. Draft West Virginia Transportation Co ................$1,700.00
   Interest from December 29th, 1888.
2. Amount erroneously credited to account of W. H. Wolfe.  365.96
   Interest from February 13th, 1897.
3. Interest on bonds City of·Parkersburg, collected and un-
      accounted for...................................   520.00
   Interest from August 14th, 1895.
4. Stock Parkersburg Chair Company...................  7,200.00
5. Interest on bonds Parkersburg Chair Company, collected
      and unaccounted for.............................   525.00
6. Item charged to "E".................................  1,000.00
7. Interest on shortage in certificates of deposit from
   January 1st, 1894, to February 3, 1897.................  502 41
   Interest from February 13th, 1897.
8. Interest on overdrafts Park City Street Railway.....'..  638.55
   Interest from February 1, 1897.
9. On note $2,700.00 and renewals, endorsed by L. B. Mc-
      Farland.
         (1.)   Note, July 30, 1895 ...............   200.00
                Int. from July, 1895. ·
         (2.)   Interest on $2,500.00 from July 30,
                1895, to December 3, 1895...........    50.00
                Interest from December 3, 1895.
         (3.)   Interest on $2,500.00 note December
                3, 1895, to April 6, 1896............    50.00
                Interest from April 6, 1896.
         (4.)   Interest on $2,300.00 note Apr." 6,
                1896, to August 9, 1896..... ...... ..    44.25
                Interest from August 9, 1896.
         (5.)   Charged against profits April 6th,
                1896 ............................   200.00
         (6.)   Interest $2,000.00 note August 9th,
                1896, to November 9, 1896............    30.00
                Interest from November 9, 1896.
         (7.)   Charged against profits August 9,
                1896 ............................   300.00
                Interest from August 9, 1896.

(8.)   Interest on $1,900 note for 3 months $ 28.50
       Interest from February 13th, 1897.
(9.)   Charged against profits November 9,
       1896 ............................ 100.00
       Interest from November 9th, 1896.
10.  Charged against profits July 7, 1896 ................ 100.00
     Interest from July 7, 1896.
11.  Park City Street Railway note of December 16, 1891.. 5,000.00
     Interest from December 16, 1891.

Plaintiff filed a special reply claiming that the first item of defendant's statement, $1,700.00, was his private property; that the second item, $365.96, was for the overcharge of interest included in the $35,000.00 of notes; that the third item of $520.00 the bank received the benefit of, and the plaintiff did not; that the fourth item of $7,200.00 was his individual property, and the bank had no interest therein; that the fifth item, $525.00 the bank received, and he did not; that the sixth was for a bad debt of one Richardson for which he was not liable; that the seventh item, $502.41 was for interest on the shortage of $2,791.17, which he made good to aid the bank, but for which he was not legally liable either as to principal or interest; that the eighth item of $638.55 is not an individual liability of the plaintiff, and that the Park City Street Railway Company had settled with the bank and paid all that it owed; that the ninth item, being the $2,700.00 note, the interest sought to be collected, was a note with all its renewals given in the interest of the bank, to temporarily cover up some bad bills held by the bank, and the interest thereon should be really a charge against the bank, instead of against him individually: the same answer is given as to the tenth item of $100.00; that the 11th item of $5,000.00 is for a note of the Park City Railway Company, which was paid and of which the plaintiff received no advantage in any manner; and that the whole account is a mere trumped up affair to prevent plaintiff from getting the just relief which he is entitled to in this case.

The court on the bill, answer, special replication and proofs, after having overruled the plaintiff's motion to strike out the matters of affirmative relief prayed for in the answer, decided that the defendant was not entitled to such affirmative relief, and referred the case to a commissioner to ascertain and report whether the plaintiff was entitled to the relief sought by him,

and whether the defendant was entitled to any offsets against such demand and any other matter deemed pertinent by himself or required by any of the parties in interest.

The commissioner reported that the plaintiff was entitled to have the $5,000.00 note canceled and that the bank had no just offsets or defense against the same.

The defendant filed three general exceptions to and which covered the whole report. The court overruled the exceptions, confirmed the report, and granted plaintiff the relief sought. From this decree the defendant appeals.

This Court has firmly established the doctrine that "The findings of the circuit court as to facts in issue, unless against the plain preponderance of the evidence, is conclusive upon this Court." *Weaver* v. *Akin,* 48 W. Va., 456; *Poling, Truslee,* v. *Condon-Lane Boom & Lumber Co.,* decided at this term. In short, the appellant places himself in the position of a demurrant to the evidence on which the facts are founded, and unless he can show that the determination of the circuit court is plainly contrary to the preponderance of evidence, the decree of the circuit court will be affirmed. To establish any other rule would be simply to place this Court in the position of making a last guess to overthrow the decision of the circuit court. If this Court can see that the circuit court has decided contrary to the plain preponderance of the evidence, it can act advisedly, and with justice in reversing the action of the circuit court, but if the matter is left in doubt from an examination of the evidence, this Court has no justification in taking any other course than to remain inactive and permit the decree of the circuit court to prevail.

There are only two questions presented to this Court by this record.

First, was the circuit court justified in refusing to allow the defendant bank the affirmative relief sought by it? All the claims arose prior to the compromise made between the directors and the plaintiff, and it must be presumed that the directors had full knowledge of the same at that time. 3. Am. & En. En. Law (2 Ed.) 843. Nor will the law permit them to plead ignorance thereof when their duty required them to have full knowledge of all of the affairs of the bank, and such a plea would necessarily imply a neglect to discharge such duty. It was in their power

to know all about them before the compromise, and adjustment, and if they did not know it was their own fault. They had access and control of all the books of the bank. They had the right to employ expert assistants, and if these claims or any of them were justly chargeable against their cashier, it was their neglect not to bring them forward before the adjustment was made. Their excuse that they permitted themselves to be deceived by their cashier is not sufficient, for he was under their control and subject to their orders, and their duties required them to superintend his work. He was their servant to do their bidding and losses occurring by reason of the mutual negligence of both should not be charged up to him entirely. But passing this by, there is not a single item charged that this Court can say from the evidence should be allowed contrary to the finding of the circuit court. The most that can be said about them is that some few of them appear to be doubtful. The defendant did not assert them until this suit was instituted, and they were becoming decidedly stale. If the plaintiff had a just demand for any items of its claim, its remedy at law was adequate and complete, but may now be barred by the statute of limitations. The execution of the notes and trust must be regarded as received in accord and satisfaction of all plaintiff's liabilities to the bank. In the absence of satisfactory evidence showing mistake, fraud or unconscionable advantage, such a settlement or compromise cannot be disturbed. Where, however, it is clear a mutual mistake has been made equity will intervene to correct it. 1 Am. & En. En. Law, (2nd Ed.) 428.

The evidence, which is bulky and to some extent conflicting, satisfied the circuit court and commissioner that a mutual mistake had been made, and that the plaintiff had assumed to pay $5,000.00 more than he should pay. The directors admit that there is a discrepancy in favor of the domestic bills account of $4,262.42. The special examiner found and reported that this was caused by charging the plaintiff with one more note of $5000.00 of the Park City Street Railway Company than he was liable for on account of one of the notes being duplicated or renewed. He was not only charged with the old note, but with the renewal thereof. The difference between $5,000.00 and $4,262.42, being the sum of $737.58, is not accounted for, but this furnishes no good reason why the plaintiff should make it good out

of the overcharge against him, as he is not shown to be in fault in regard thereto. In view of the great default of the teller right under the very noses of the directors, it is not right that they should charge to the plaintiff all losses that they have not yet been able to trace home to the defaulter. If they would hold the plaintiff responsible, they should have long since shown his responsibility. Failing to do that, they should do justice by him, and not attempt to make him the scapegoat for not only his own but the delinquencies of others.

According to the evidence as it appears in the record, it is impossible for this Court to say that the commissioner and the circuit court erred against the decided preponderance and weight thereof, and hence the decree must be affirmed.

*Affirmed.*