# CHARLESTON

## HARPER v. COMBS.

Submitted February 6, 1907.     Decided March 19, 1907.

1. REFORMATION OF INSTRUMENTS—*Mistake in Deed.*

A deed of trust for a debt on three tracts of land by mutual mistake of the parties includes a certain tract when another was intended. The trustee sells the three tracts and makes a deed to the purchaser, the creditor. The creditor may reform the deed of trust, but not the trustee's deed. (p. 563.)

2. SAME—*Pleading.*

A deed of trust by mistake includes a wrong tract of land, when another was intended. The debtor afterwards conveys to a third party the tract which should have been inserted in the trust. A bill to reform the deed of trust must charge notice by such third party of *such mistake.* (p. 563.)

3. SAME—*Laches.*

A bill to reform a deed for a mistake therein, to be free from the defence of *laches* must set forth the discovery of the mistake, when it was made, what it was, how it was made, and why the discovery was not sooner made. A mere general allegation of ignorance at one time, and knowledge of the mistake at another, will not answer. (p. 564.)

(POFFENBARGER, JUDGE, Absent.)

Appeal from Circuit Court, Raleigh County.

Bill by H. H. Harper against Jeremiah Combs and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

A. P. FARLEY and M. F. MATHENY, for appellant.

McGINNIS & HATCHER, for appellees.

BRANNON, JUDGE:

Jeremiah Combs made a deed of trust, 11th January, 1889, to a trustee to secure a debt to H. H. Harper. The trust conveyed three different tracts of land. One of the tracts is described as lying in Raleigh county and situated on Wingrove Branch waters of Sand Lick containing 61 acres 2 roods and 29 poles, and is described as conveyed from Francis Granger and John Granger to Combs by a

deed recorded in the county clerk's office in Deed Book B, page 522. At that time Combs did not own this tract. He had conveyed it away. He owned a tract on Sand Lick adjoining the other two tracts mentioned in the deed of trust containing 75 acres conveyed to him by Charles Fippes. The trustee sold, under the deed of trust, the three tracts by it conveyed, one being the Granger tract, Harper becoming the purchaser of the three tracts, and the trustee conveyed the three tracts described in the deed of trust to Harper by deed 31st March, 1892. Combs conveyed the said 75 acre tract to John P. Arthur and Bettie Arthur by deed 8th March, 1901, for a consideration of $500 cash as expressed in the deed. Shortly after the date of the deed to the Arthurs, before the 31st July, 1901, the earliest date of the suit appearing in the record, Harper brought a suit against Combs and John P. and Bettie Arthur alleging that the insertion in the deed of trust of the said Granger tract was a mutual mistake of both Combs and Harper at the time when the deed of trust was made; that it was the intent and purpose that the said 75 acre tract should be conveyed in the deed of trust, and that such was the understanding between Combs and Harper. The bill sought to reform the deed of trust so as to make it convey the said tract of 75 acres, and to reform the deed of the trustee to Harper so as to make it convey the said 75 acres, and to set aside the deed to John P. and Bettie Arthur as having been made by combination between Combs and Arthurs to cheat and defraud Harper out of the 75 acre tract of land. The decree of the circuit court dismissed the bill, and Harper appeals.

Say that the mistake of inserting in the deed of trust one tract of land when another was intended has been proven. The evidence fairly shows this fact, outside the evidence of Harper, he being incompetent to speak because of Combs' death pending the suit, and say that this would call for a reformation of the deed of trust. Still, how can Harper ask that the trusteee's deed be reformed? The trustee did not sell the 75 acres; Harper did not buy the 75 acres; and a reformation of the trustee's deed to Harper would make it say what would not be the truth. This cannot be done. Harper's right does not come from that trustee's deed. Any right he may have must rest

on the reformation of the deed of trust. Harper has never been vested with any kind of title to the 75 acres, because it never was inserted in the trust deed or sold by the trustee.

Should we reform the trust deed? Not unless we can say, upon all the evidence, that the right of the Arthurs is void as to the right of Harper. If we cannot impeach or overthrow the right of the Arthurs, of what avail would be reformation of the trust deed? Had the Arthurs notice of the right of Harper, notice of his equity to reform the trust deed, notice of the mutual mistake aforesaid? We may say that the Arthurs knew of some claim to the 75 acres made by Harper, because some evidence shows that Arthur proposed to buy the tract of Harper; but under the evidence it is somewhat doubtful whether this was before or after the deed to Arthur; the evidence here is conflicting. It looks like it was before that deed, but the evidence is uncertain in this matter. Say, however, that it was before that deed. And we must here say that some evidence shows that Arthur's proposition to purchase related, not to the 75 acres, but to another tract, which Arthur wanted to buy to have access to a public road. Here again the evidence is indefinite and doubtful. What is it that, at the utmost, of which the Arthurs had notice? Only that Harper set up some claim, not that the Arthurs knew of the basis on which Harper's right would rest, namely that a *mistake* had been made in putting the wrong tract in the deed of trust. The evidence does not show that the Arthurs knew of that *mistake*, and is it not essential that they should have notice of that particular fact? And here I observe the important fact that the bill does not allege that Arthurs knew of this mistake, as it must. It charges that they combined with Combs to defraud Harper, "with full knowledge that the same was plaintiff's land." This could not be. It was not his land. He had not bought it. Shall we say that it was their duty to enquire of Harper? I hardly think so. Anyhow, Arthur went to a lawyer and got him to examine the record, and found that the deed of trust did not include the 75 acres, and was advised that Harper had no title to it, and that Arthur could safely buy. We do not think that a fraudulent act on the part of Arthurs is proven. They perhaps knew

simply of some claim by Harper; but they did not know, so far as the evidence shows, of the mistake alleged to have been made in drawing the deed of trust.

Arthur was a son-in-law and Bette Arthur, his wife, a daughter of Combs. Is that a factor in this case? I do not see that it is as it would be in the case of a fraudulent conveyance against a creditor.

*Laches.* Harper waited twelve years from the date of the deed of trust until he brought the suit to correct the mistake. Is he barred by *laches!* He lived in the neighborhood. He had this deed of trust in his possession. The record of it was public. The bill in this case states that Harper never knew of the mistake until the deed had been made to Arthurs. . "When a party relies on ignorance of facts material to his rights, as an excuse for his *laches* and delay in asserting them, he must show why he was so long ignorant, and acquit himself of all knowledge of facts which would have put him on inquiry, and must show how and when he first acquired a knowledge of the facts." 18 Am. & Eng. Ency. L. (2d Ed.) 114. Now, the bill does tell us when and how Harper discovered the mistake, and so far complies with the rule just quoted; but the bill does not come up to the demand that an explanation must be given of the prolonged delay. In *Badger* v. *Badger*, 2 Wall. 87, 95, it is held that the party who makes such appeal "should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; and how and when he first came to a knowledge of the matters alleged in the bill." In *Wood* v. *Carpenter*, 101 U. S. 140, the Court says: "A general allegation of ignorance at one time and of knowledge at another is of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner." These principles are stated and approved in *Hardt* v. *Heidweyer*, 152 U. S. 547. What prevented Harper from finding out this mistake? What impediment existed? The bill does not say. Combs did nothing to prevent discovery. It was simply an accident, or rather want of diligence, which the authorities cited demand. How long can a man sleep and simply say he was asleep? I think that the authorities given in *Lafferty* v. *Lafferty*, 42 W. Va. 783,

will show that the law demands, "not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts." The same doctrine applies to mistakes. It will be said that Harper was in possession, because Combs had rented the tract from him. This is very doubtful under the evidence. That Combs remained in possession of this tract there is no question; but Harper says that he was in possession as his tenant and therefore Harper need not have sued, and therefore is not barred by *laches*. Of course, Harper's evidence as to this is not admissible, Combs being dead at the date of Harper's deposition. The evidence as to this tenancy is not clear. I will add an important fact, that is, that Combs died after the suit was brought and his version we cannot have. The death of a party active in a transaction constitutes under the law of *laches* a strong reason against affording relief. There must be repose at some time.

The circuit judge upon evidence somewhat conflicting and inconclusive and indefinite has dismissed the bill. "A decree of a circuit court founded on conflicting and contradictory testimony will not be disturbed, unless plainly erroneous." *Yoke* v. *Shay*, 47 W. Va. 40. "Unless plainly erroneous, the decree of the circuit court will not be disturbed." *Spurgin* v. *Spurgin*, 47 W. Va. 38.

We therefore affirm the decree of the circuit court.

*Affirmed.*